UNITED STATES DISTRICT COURT
for the
District of South Dakota

In the Matter of the Search of:       )
                                   )    Case No.  5:21- mj- 92
USA v. 21-75-05               )
                                   )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the District of _____South Dakota_____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of a Controlled Substance |
| 18 U.S.C. § 922(g)(1) | Possession of a Firearm by a Prohibited Person |

The application is based on these facts:
- ☒ Continued on the attached affidavit, which is incorporated by reference.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
 under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.
- ☐ Your applicant requests that no notice be given prior to the execution of the search warrant, i.e., "no knock", the basis of which is set forth in the attached affidavit.
- ☐ Your applicant requests authorization to serve the search warrant any time day or night pursuant to Fed. R. Crim. P. 41(e)(2)(A)(ii), the basis of which is set forth in the attached affidavit.

_____
*Applicant's signature*

_____ATF SA Riley Cook_____
*Applicant's Name and Title*

☐ submitted, attested to, and acknowledged by reliable electronic means.

Date: _5-14-21_

_____
*Judge's signature*

City and state: _Rapid City, SD_

_____
Daneta Wollmann, U.S. Magistrate
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

IN THE MATTER OF THE SEARCH OF INFORMATION
ASSOCIATED WITH THE FOLLOWING INSTAGRAM
USER:

USA v. 21-75-05

THAT IS STORED AT PREMISES CONTROLLED BY
FACEBOOK.

5: 21-mj-92

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

State of South Dakota      )
                                          ) ss
County of Pennington      )

I, Riley Cook, being duly sworn, state as follows:

1.      I am a Special Agent ("SA") with the United States Bureau of Alcohol, Tobacco,

Firearms, and Explosives ("ATF"), currently assigned to the Rapid City Satellite Office.  I have

been employed by the ATF since July, 2014. Prior to ATF, I was employed as a Special Agent

with the South Dakota Division of Criminal Investigation where I was assigned to investigate

felony crimes including, but not limited to, narcotics trafficking and other types of violent crime.

I have completed the Criminal Investigator Training Program at the Federal Law Enforcement

Training Center ("FLETC").  I have also completed ATF Special Agent Basic Training course.

While attending the academies at FLETC in Glynco, Georgia, I received specialized training

concerning violations of the Gun Control Act within Title 18 of the United States Code and

violations of the National Firearms Act within Title 26 of the United States Code.

2.      As a law enforcement officer, I have participated in numerous federal and state

investigations involving the sale, possession, and trafficking of firearms and/or controlled

1

substances. I have also participated in various armed robbery cases. Through my participation in these investigations, I have debriefed numerous defendants, informants, confidential sources, and witnesses who had personal knowledge regarding firearms and/or narcotics trafficking. I have also participated in undercover operations, conducted physical and electronic surveillance, used informants, seized firearms and narcotics, executed search warrants, and made arrests.

3.    I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram user account that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a social networking company. The information to be searched is described in the following paragraphs and in Attachments A and B.

4.    This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Instagram to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user's account.

5.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. §§ 922(g)(1), Possession of a Firearm by a Prohibited Person, and 21 U.S.C. §§ 841(a)(1), Distribution of a Controlled Substance, are present in the following Instagram account, user name: jq_jackson25. There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B. This affidavit is made for the sole purpose of demonstrating probable cause for the issuance of this search warrant and does not set forth all of my knowledge of this investigation.

## PROBABLE CAUSE

6.    In January, 2021, a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Source of Information (SOI) contacted ATF Special Agent (SA) Riley Cook and advised that

2

Jquann JACKSON was in possession of firearms and illegal drugs, suspected cocaine, on both Snapchat and Instagram. The ATF SOI indicated that JACKSON may be travelling to Denver, Colorado in order to obtain cocaine and may also be receiving illegal drugs by unknown mail couriers. The SOI indicated that JACKSON was in possession of a semi-automatic rifle on a Snapchat video observed by the SOI; however, the SOI is unable to take a copy of the video on Snapchat as it would alert JACKSON. The SOI believed that JACKSON was travelling in a silver Audi.

7.     In February, 2021, the SOI again contact ATF SA Cook and advised that JACKSON was attempting to sell firearms on Snapchat. The SOI again informed SA Cook that JACKSON may also be receiving illegal drugs via unknown mail couriers. The SOI stated that JACKSON may be residing with a female in Rapid City, SD.

8.     ATF SA Cook reviewed JACKSON's criminal history and determined that JACKSON has been convicted of multiple felony offenses; including Burglary (felony) in Meade County, SD, dated 10/25-2013 and Vandalism-Intentional Damage to Property 1st Degree (felony) in Pennington County, SD, dated 02/24/2015. Therefore, JACKSON is prohibited from possessing and/or receiving firearms.

9.     On March 2, 2021, the SOI stated that JACKSON has posted multiple photographs and short videos on Instagram of JACKSON possessing firearms. JACKSON's Instagram profile name was identified as 'jq_jackson25.' The SOI provided SA Cook with digital photographs and short videos taken from JACKSON's Instagram account by the SOI. A female, believed to be Carly WOLF, is also observed in the photographs and videos taken from JACKSON's Instagram account. It is suspected that JACKSON and WOLF reside together in Rapid City, SD.

10.     ATF SA Cook and ATF SA Brent Fair reviewed the photographs and short videos from JACKSON's Instagram account. A male, believed to be JACKSON, after comparing

3

JACKSON's Pennington County Jail booking photograph, is observed in possession of multiple firearms. The firearms are unable to be fully identified; however, the firearms are believed to be a Springfield Armory, model XD Mod 2, .45 caliber semi-automatic pistol; a SCCY, model CPX-2, 9mm caliber semi-automatic pistol; and an AR-15, .223 caliber semi-automatic rifle with a one-hundred (100) round drum magazine.

11. Pursuant to the investigation, it was learned that JACKSON may reside with WOLF at 1511 5th Street, Rapid City, SD 57702. ATF SA Cook travelled past the above identified residence and observed multiple vehicles in the driveway, including a silver Audi bearing South Dakota license plate number 2Z3582, which was identified to be registered to Carlie WOLF at the above identified residence.

12. On April 7, 2021, ATF SA Riley Cook submitted a preservation requested to Facebook regarding Jquann JACKSON's Instagram account, identified as 'jq_jackson25.' The preservation request was submitted via Facebook's Law Enforcement Portal. The preservation request submitted of JACKSON's Instagram account included content from December 1, 2020 through April 7, 2021

13. On April 27, 2021, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) Riley Cook was contacted by an ATF Source of Information who indicated that he/she had information relating to Jquann JACKSON. On this date, ATF SA Cook and ATF Task Force Officer (TFO) Chad Sayles met with the SOI in Rapid City, SD.

14. The SOI stated that JACKSON has recently posted videos on Instagram depicting illegal drugs and JACKSON in possession of a firearm. JACKSON's Instagram account was again identified as 'jq_jackson25.' The SOI provided ATF SA Cook with a copy of the videos. SA Cook observed in one video, posted by Jquann Jackson, a single large shard of suspected methamphetamine. In a separate video, also posted by Jquann JACKSON, JACKSON is filming

4

himself walking with what appears to be a pistol in his waistband. ATF SA Cook captured screenshots of the videos which have been attached

15.     On April 27, 2021, Electronic Video Surveillance Equipment (EVSE) was established at Jquann JACKSON and Carlie WOLF's residence located at 1511 5th Street Rapid City, SD. The EVSE is video recorded. ATF SA Cook has monitored the EVSE and has observed on multiple occasions vehicles arrive at the residence and, either JACKSON or WOLF, exit the residence, meet with an occupant of the vehicle for a brief amount of time, and return to the residence. The vehicle will then depart the area. The behavior observed is indicative of illegal drug distribution.

16.     On April 28, 2021, an ATF SOI provided ATF SA Riley Cook with a copy of video recordings of Snapchat content that JACKSON had recently posted. The Snapchat videos depict suspected illegal drugs, possibly cocaine or methamphetamine, and an individual, believed to be JACKSON, filming himself as he walks with what appears to be a pistol in his waistband.

17.     On April 28, 2021, ATF was contacted by Rapid City Police Department (RCPD) Officer Brandon Johnson who indicated that Officer Johnson had received information JACKSON was posting videos on Snapchat depicting illegal drugs and firearms that JACKSON was attempting to sell. Officer Johnson stated that he had received a copy of a video from JACKSON's Snapchat showing what is believed to be cocaine. Officer Johnson did not receive a copy of the Snapchat video of JACKSON in possession of firearms. Officer Johnson provided ATF SA Cook with a copy of the Snapchat video posted by JACKSON.

18.     Your affiant believes there is probable cause to search JACKSON's Instagram account for evidence of a violation of 18 U.S.C. §§ 922(g)(1) and 21 U.S.C. § 841(a)(1), based on information obtained from sources of information who have provided law enforcement with copies

5

of Instagram video posted by JACKSON attempting to distribute illegal drugs and in possession of firearms.

## INFORMATION ON INSTAGRAM

19.     Instagram is a service owned by Facebook, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

20.     Facebook collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.  Facebook keeps records of changes made to this information.

21.     Facebook also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

22.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

6

23.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Facebook maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Facebook and third-party websites and mobile apps.

24.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

25.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Facebook to access the contact lists on their devices to identify which contacts are Instagram users. Facebook retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Facebook to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

26.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on

7

privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

27.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Facebook's servers.

28.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

29.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Facebook's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

30.     Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

31.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts,

8

videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

32.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

33.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Facebook retains records of a user's search history and followed hashtags.

34.     Facebook collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Facebook to personalize and target advertisements.

35.     Facebook uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Facebook maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising

9

identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

36.     In some cases, Instagram users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

37.     For each Instagram user, Facebook collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

38.     As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.

39.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Facebook can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, [[email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time)]] may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device

10

identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

40. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

41. Therefore, Facebook's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

42. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## REQUEST FOR SEALING

43. I further request that the Court order that the matter be sealed until further order of the Court. The matter is an ongoing criminal investigation that is neither public nor known to all

the targets of the investigation.  Accordingly, there is good cause to seal the matter because premature disclosure may seriously jeopardize the ongoing investigation.

## LIMIT ON SCOPE OF SEARCH

44.     I submit that if during the search, agents find evidence of crimes not set forth in this affidavit, another agent or I will seek a separate warrant.

## CONCLUSION

45.     Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Dated: 5/14/2021

_____
Special Agent Riley Cook
ATF

SUBSCRIBED and SWORN to
_____ in my presence
_____ by reliable electronic means

This 14th day of May, 2021.

_____
DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Instagram profile with username: **jq_jackson25** that are stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a, company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

1

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Instagram, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to the government for each account listed in Attachment A:

a. All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

b. All past and current usernames associated with the account;

c. The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d. All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

e. All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f. All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g. All communications or other messages sent or received by the account from December 1, 2020 to April 7, 2021.

h. All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content from December 1, 2020 to April 7, 2021.

i. All photographs and images in the user gallery for the account from December 1, 2020 to April 7, 2021.

j. All location data associated with the account, including geotags from December 1, 2020 to April 7, 2021.

k. All data and information that has been deleted by the user from December 1, 2020 to April 7, 2021.

l. A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

m. A list of all users that the account has "unfollowed" or blocked;

2

n. All privacy and account settings;

o. All records of Instagram searches performed by the account, including all past searches saved by the account from December 1, 2020 to April 7, 2021.

p. All information about connections between the account and third-party websites and applications; and,

q. All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations 18 U.S.C. §§ 922(g)(1) and 21 U.S.C. §§ 841(a)(1), from December 1, 2020, to April 7, 2021, including, for the user name identified on Attachment A.

## III. Information Regarding Search Warrant Compliance by Instagram:

Instagram shall disclose response date, if any, by sending to:

>Special Agent Riley Cook
>Bureau of Alcohol, Tobacco, Firearms and Explosives
>1825 Clear View Lane, Suite 201
>Rapid City, SD  57702
>Riley.Cook@atf.gov
>(406)-694-6620

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO

## FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the

United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this

certification is true and correct. I am employed by Instagram, LLC, and my title is

_____. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state

that the records attached hereto are true duplicates of the original records in the custody of

Instagram, LLC. The attached records consist of _____ (pages/CDs/megabytes). I

further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the

matter set forth by, or from information transmitted by, a person with knowledge of those

matters, they were kept in the ordinary course of the regularly conducted business activity of

Instagram, LLC, and they were made by Instagram, LLC as a regular practice; and

b. such records were generated by Instagram, LLC's electronic process or system that produces

an accurate result, to wit:

    1. the records were copied from electronic device(s), storage medium(s), or file(s) in the

    custody of Instagram, LLC in a manner to ensure that they are true duplicates of the

    original records; and

    2. the process or system is regularly verified by Instagram, LLC, and at all times pertinent

to the records certified here the process and system functioned properly and normally.

    I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of

the Federal Rules of Evidence.

_____    _____
Date                            Signature

UNITED STATES DISTRICT COURT
for the
District of South Dakota

In the Matter of the Search of

)
USA v. 21-75-05                                            )    Case No.    5:21-mj-92
                                                          )

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of ___South Dakota___ *(identify the person or describe the property to be searched and give its location)*:

See **ATTACHMENT A**, attached hereto and incorporated by reference

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crime in violation of 21 U.S.C. § 841 and 18 U.S.C. § 922(g)(1), as described in **ATTACHMENT B**, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ___May 28, 2021___ *(not to exceed 14 days)*

☐ in the daytime  6:00 a.m. to 10 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Daneta Wollmann___.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30).*         ☐ until, the facts justifying, the later specific date of _____
.

☐ I find that good cause has been established to authorize the officer executing this warrant to not provide notice prior to the execution of the search warrant, i.e., "no knock".

Date and time issued: ___5-14-21    9:30an___          _____
                                                          *Judge's signature*

City and state:          ___Rapid City, SD___          ___Daneta Wollmann, U.S. Magistrate___
                                                          *Printed name and title*

cc: AUSA Patterson          Kle

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>5:21-mj-92 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*